# Exhibit A

EFiled: Mar 13 2023 11:00AM EDT
Transaction ID 69324521
Case No. N23C-03-104 EMD

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAMSEY ASSET MANAGEMENT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. N23C-03- |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| THE STANDARD INSURANCE COMPANY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### Nature of the Action

1. This action seeks recovery of compensatory and punitive damages from defendant The Standard Insurance Company for its breach of contract, bad faith breach of contract, and otherwise wrongful refusal to honor its contractual obligations under two business overhead expense policies owned by plaintiff Ramsey Asset Management, LLC (hereinafter, "Ramsey Asset Management").

2. This action seeks, among other relief, a finding that the defendant The Standard Insurance Company ("Standard") must pay business overhead expense benefits to the plaintiff Ramsey Asset Management for business expenses incurred by Ramsey Asset Management beginning on June 10, 2014, and stemming from its principal William Ramsey's cancer diagnoses and his inability to continue to run his business enterprise.

## The Parties

3. Plaintiff Ramsey Asset Management is an inactive limited liability corporation which provided investment advisory services to clients in numerous states, including Delaware, and was incorporated under the laws of the State of Delaware.

4. William Ramsey was the Chief Executive Officer and Chief Investment Officer and principal owner of Ramsey Asset Management.

5. Defendant Standard is an Oregon corporation with an address at 1100 SW Sixth Avenue, Portland, Oregon, 97204. Standard is licensed to conduct business in Delaware and has authorized more than five hundred insurance agents to conduct business in Delaware on its behalf. Standard has also filed multiple lawsuits in Delaware.

## The Insurance Contract

6. On July 3, 1989, Ramsey Asset Management's predecessor company submitted to Minnesota Mutual Life Insurance Company an application for two insurance policies. The policies were designed to provide disability coverage for business overhead expenses.

7. One policy, No.00H1825731, was purchased on September 29, 1989.

8. The second policy, No.00H1834539, was purchased on October 29, 1989.

9. The monthly benefit under policy No. 00H1825731 is $66,449.00 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $996,735.00.

10. The monthly benefit under policy No. 00H1834539 is $25,556.80 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $383,352.00.

11. Both policies currently list Mr. Ramsey as the insured and Ramsey Asset Management as the owner.

12. At some point in time, Minnesota Mutual Life sold all relevant insurance policies to Standard.

13. The premiums for these policies were billed and paid quarterly by Ramsey Asset Management.

**Mr. Ramsey's cancer diagnosis**

14. On June 10, 2014, Mr. Ramsey was diagnosed with renal cell carcinoma.

15. Mr. Ramsey sought medical treatment for his condition from Dr. Mark Vasiliadis in Reston, Virginia, and Dr. Mo Allaf, in Baltimore, Maryland.

16. The cancer caused Mr. Ramsey to endure severe urological issues and fatigue.

17. Further, renal cell carcinoma has a high mortality rate. This fact caused Mr. Ramsey tremendous anxiety about his future.

18. These symptoms caused Mr. Ramsey to have significant difficulties in concentrating and focusing.

19. The combined effect of the urological issues, fatigue, anxiety, and strain on his concentration and focus rendered Mr. Ramsey unable to perform the duties of his job.

20. Mr. Ramsey's drop in job performance was evidenced by the departure of clientele from Ramsey Asset Management.

21. Ramsey Asset Management's gross earnings fell precipitously following his diagnosis.

22. In 2018, Mr. Ramsey was diagnosed with prostate cancer.

23. Ramsey's illness and disabilities lasted over four years.

24. As a result of Mr. Ramsey's medical issues, Ramsey Asset Management winded down its operations starting in 2018.

25. Ramsey Asset Management ceased operations on December 31, 2019.

### The Filing of the Claim

26. On behalf of Ramsey Asset Management, Mr. Ramsey provided a notice of insurance claim to Standard on October 17, 2018, stating that he had been

unable to fully perform his work duties as of the date of his cancer diagnosis: June 10, 2014.

27. On behalf of Ramsey Asset Management, Mr. Ramsey stated in the claim that the cancer illnesses prevented him from providing the necessary focus on the complex analysis and decision making needed to manage his clients' investment portfolios.

28. On October 27, 2018, Standard acknowledged Ramsey Asset Management's claim.

29. On June 3, 2019, Standard requested information on why notice of claim was not provided within the time period specified in the policy.

30. On June 21, 2019, Standard interviewed Mr. Ramsey, and formally requested financial information, including Ramsey Asset Management's business tax returns, schedules and attachments for multiple years, and monthly profit and loss statements.

31. On behalf of Ramsey Asset Management, Mr. Ramsey was fully compliant, providing financial records for Ramsey Asset Management, including tax returns from 2012 to 2017, profit and loss statements from 2012 to 2018, and the company's general ledgers for 2012 to 2018, in addition to the entirety of his medical records from his attending physicians.

32. On October 4, 2019, Standard formally denied Ramsey Asset Management's claim.

33. On April 7, 2020, on behalf of Ramsey Asset Management, Mr. Ramsey appealed Standard's denial of the claim.

34. On May 20, 2020, Standard's Administrative Review Unit upheld the denial of the claim.

## Standard's Wrongful Conduct

35. Standard has denied coverage for all claims pursued by Ramsey Asset Management.

36. Standard has taken a position that the claim was not filed within the 30-day notice provided by the policy.

37. The policy states that a claim must be made within 30 days after the onset of any loss covered by the policy.

38. Mr. Ramsey has made clear to Standard that he was unaware of the polices and had no contact with the policies after their purchase.

39. Further, the symptoms of his illness kept him from being able to focus on financial issues, including the determination of what insurance assets may have been available to him or his company.

40. Under these circumstances, it would have been impracticable, if not impossible, for Mr. Ramsey, on behalf of Ramsey Asset Management, to provide notice before he did.

41. Further, it is settled in Delaware that before coverage is forfeited due to failure to notify, the insurer must establish prejudice. *See* Hercules Inc. v. AIG Aviation, Inc., 776 A.2d 550, 567 (Del. Super. Ct.), aff'd, 760 A.2d 162 (Del. 2000); *See also,* State Farm Mut. Auto. Ins. Co. v. Johnson, 320 A.2d 345, 346 (Del. 1974).

42. Standard has provided no legitimate example of prejudice that it has faced due to the timing of Ramsey Asset Management's claim.

43. Furthermore, Standard's justification for denial of the claim is riddled with inaccuracies and illogical conclusions.

44. Rather arbitrarily and without reason, Standard chose to consider the claim as of March 22, 2018, rather than the date of Mr. Ramsey's cancer diagnosis on June 10, 2014.

45. Standard asserts that there was no basis to support that Mr. Ramsey's sickness kept him from working as of June 10, 2014, despite the impairments described in paragraphs 16 through 23.

46. Standard did not find merit in the rigors of Mr. Ramsey's joint role as Chief Executive Officer and Chief Investment Officer of Ramsey Asset Management.

47. Standard relied on the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") to assess Ramsey's ability to perform his regular occupation.

48. However, there is no DOT description for a Chief Executive Officer or Chief Investment Officer, nor for Mr. Ramsey's unique dual role for Ramsey Asset Management.

49. Asset management is a very competitive business to both obtain and keep clients, involving the ability to travel, meet with executives, meet potential clients, and to discuss various portfolios of stocks, bonds, and other entities. Each of these roles requires a high degree of stamina, attention to detail, and concentration, in addition to being a fiduciary duty, and facing heightened legal liability.

50. Thusly, Ramsey Asset Management is due $1,380,087.00, the combined amount of the maximum benefits due under both policies.

## COUNT I

### Breach of Contract

51. Plaintiff Ramsey Asset Management repeats and incorporates by reference the allegations set forth in paragraphs 1 through 50 above.

52. Standard has breached the terms of the company's policies. Standard's breaches include, without limitation, its refusal to pay overhead business expense benefits to Ramsey Asset Management for the duration of Mr. Ramsey's sickness while running his business.

53. As a direct result of Standard's breaches of contract, Ramsey Asset Management has been deprived of the benefit of insurance coverage for which substantial premiums were paid. As a further result of Standard's breaches of contract, Ramsey Asset Management has suffered economic injury.

54. Defendant Standard unlawfully and unreasonably failed and refused to pay benefits due under the policies despite Ramsey Asset Management's compliance with all material conditions precedent to receipt of benefits under the policies.

## COUNT II

### Bad Faith Breach of Contract

55. Plaintiff Ramsey Asset Management repeats and incorporates by reference the allegations set forth in paragraphs 1 through 54 above.

56. Defendant Standard's failure and refusal to tender the amounts due under the policies was without reasonable justification.

WHEREFORE, plaintiff Ramsey Asset Management respectfully requests that this Court enter judgment in its favor and against defendant Standard as follows:

a. Awarding Ramsey Asset Management compensatory damages for Standard's breaches of contract;

b. Awarding Ramsey Asset Management compensatory and punitive damages for Standard's bad faith breaches of contract;

c. Awarding Ramsey Asset Management its attorneys' fees for this action;

d. Awarding Ramsey Asset Management all costs of this action;

e. Awarding Ramsey Asset Management pre- and post-judgment interest; and,

f. Awarding such other and further relief as this Court deems just and proper.

MURPHY & LANDON

*/s/ Roger D. Landon*
ROGER D. LANDON, No. 2460
1011 Centre Road, Suite 210
Wilmington, DE 19805
rlandon@msllaw.com
(302) 472-8112 - Direct
(302) 472-8135 - Fax
Attorney for Plaintiff