IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAMSEY ASSET MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE STANDARD INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 23-453-CFC |

Roger D. Landon, MURPHY & LANDON, P.A., Wilmington, Delaware

*Counsel for Plaintiff*

James W. Semple, R. Grant Dick IV, COOCH AND TAYLOR P.A., Wilmington, Delaware; Brooks R. Magratten, Michael J. Daly, PIERCE ATWOOD LLP, Providence, Rhode Island

*Counsel for Defendant*

## MEMORANDUM OPINION

October 30, 2023
Wilmington, Delaware

*[signature]*
COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Ramsey Asset Management, Inc. sued Defendant The Standard Insurance Company for breach of contract and bad faith breach of contract in Delaware Superior Court. D.I. 1-1. Standard Insurance removed the case pursuant to 28 U.S.C. §§ 1441 and 1446 to this Court. D.I. 1. Pending before me is Standard Insurance's Motion to Transfer Venue (D.I. 6) to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). Because Standard Insurance has shown that, on balance, administrative considerations and the interests of justice strongly favor transfer, I will grant the motion.

## I. BACKGROUND

Ramsey Asset Management (RAM) is an inactive corporation that was incorporated in Delaware and "conducted business" in Virginia until 2019. D.I. 1-1 ¶ 3; D.I. 9 at 4–5. RAM provided investment advisory services to clients. D.I. 1-1 ¶ 3. Standard Insurance, an insurance company, is an Oregon corporation and conducts business in all 50 states, including Delaware. D.I. 9 at 5–6. On March 13, 2023, RAM sued Standard Insurance for denial of coverage for two business overhead expenses. D.I. 1-1. The expenses stemmed from the cancer diagnosis of RAM's principal owner, William Ramsey. D.I. 1-1 ¶ 2.

Ramsey is a citizen of Virginia. D.I. 6 at 3. He previously sued Standard Insurance in Delaware Superior Court in 2022 for breach of contract and bad faith breach of contract. D.I. 6-2. That case was removed to this Court and subsequently transferred to the Eastern District of Virginia. D.I. 6-3. In deciding to transfer the case, the Court reasoned:

> There is no nexus to this District other than Mr. Ramsey spends time at his beach house almost two hours away from our Courthouse. All other considerations favor our transfer to Mr. Ramsey's home venue to allow his dispute be resolved in possibly half the time they would if the case remained here hours away from his homes.

D.I. 6-3 at 5.

## II.   DISCUSSION

### A.   Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Standard Insurance contends, and RAM does not dispute, that this action could have been brought in the Eastern District of Virginia. *See* D.I. 6; D.I. 9. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to the Eastern District of Virginia.

2

Standard Insurance has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the

3

>>familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

**B. Analysis of the *Jumara* Factors**

**1. Plaintiff's Forum Preference**

This factor is of paramount importance and therefore weighs strongly against transfer. *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018).

**2. Defendant's Forum Preference**

This factor favors transfer.

**3. Whether the Claim Arose Elsewhere**

This factor favors transfer. None of the events giving rise to RAM's claims occurred in Delaware. Instead, the claims arose from policies issued to a Virginia-based company, RAM, due to losses incurred by a Virginia resident, Mr. Ramsey. D.I. 6 at 3–4. *See Paycom Software, Inc. v. Travelers Casualty & Sur. Co. of Am.*, 2022 WL 1063845, at *4 (D. Del. Apr. 8, 2022) (finding *Jumara* factor three favored transfer to Oklahoma because "nothing occurred in Delaware giving rise to the claims" and "the insurance policies at issue were issued to Paycom in Oklahoma").

4

  **4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition**

Plaintiff concedes that this factor is neutral. D.I. 9 at 6.

  **5. The Convenience of Witnesses**

Plaintiff concedes that this factor is neutral. *See* D.I. 9 at 6–7.

  **6. The Location of Books and Records**

This factor is neutral. *Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. Neither party alleges that the books and records in this action could not be produced in either forum. *See* D.I. 6 at 2–5; D.I. 9 at 2–8.

  **7. The Enforceability of the Judgment**

The parties do not dispute that this factor is neutral. *See* D.I. 6 at 2–5; D.I. 9 at 2–8.

  **8. Practical Considerations**

This factor favors transfer. *Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Neither RAM nor Standard Insurance has a connection with Delaware other than RAM's incorporation status. *See Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, 2022 WL 1046258, at *3 (D. Del. 2022) (finding *Jumara* factor eight favored transfer because "neither Plaintiffs nor [Defendant] has a

5

connection with Delaware other than [Defendant's] incorporation status"). Conversely, RAM conducted its business in Virginia and both its owners are residents of Virginia. D.I. 6 at 3; D.I. 9 at 4.

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor strongly favors transfer. This Court has a substantially more congested docket than does the Eastern District of Virginia. To analyze the relative levels of court congestion between the two districts, I take judicial notice of the most recent Federal Court Management Statistics published by the United States Courts. *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/06/30-1. These statistics cover the period between July 1, 2022, and June 30, 2023.

According to these statistics, the weighted case filings per active judgeship in this District is 682. In the Eastern District of Virginia, the weighted case filings per active judgeship is 348. The number of pending cases per active judgeship in this District is 538; in the Eastern District of Virginia that number is 335. Thus, a judge in this District has on average hundreds of more weighted and pending cases than a judge on the Eastern District of Virginia.

Given these caseload differences, it is not surprising that the median time between filing and trying a civil case in this District (36.7 months) is much longer than in the Eastern District of Virginia (21.4 months). The median time between filing and disposition of a civil case in this District is 8.0 months; whereas, the corresponding median time in the Eastern District of Virginia is 6.6 months.

In sum, in light of the substantial caseload and congestion differences between the two venues, this factor strongly favors transfer.

### 10. Local Interest in Deciding Local Controversies at Home

This factor favors transfer. RAM "operated" and "conducted business" in Virginia, and the insurance policies that Standard Insurance issued to RAM applied to RAM's presence in Virginia. D.I. 6 at 3–4; D.I. 9 at 4–5. Virginia has an interest in regulating contracts involving insurance policies issued to Virginia-based businesses. *See Paycom*, 2022 WL 1063845, at *6 ("Oklahoma has an interest in deciding a dispute that concerns insurance policies issued within its boundaries by a company headquartered in Oklahoma.").

RAM argues that this District has an interest in this case because it "has an interest in disputes involving companies incorporated in Delaware." D.I. 9 at 9. But this argument was rejected in *Paycom*. *See Paycom*, 2022 WL 1063845, at *6 ("[A]lthough Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not

7

directly related to insurance coverage disputes.") (quoting *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *9 (D. Del. July 26, 2021)).

### 11. Public Policies of the Fora

This factor is neutral. This factor overlaps with the local interest factor, and Standard Insurance's arguments with respect to this factor are the same as its arguments for the local interest factor. *See* D.I. 6 at 4. RAM argues that Delaware has a public policy interest in this case because the Delaware Limited Liability Company Act (DLLCA) "could become a focal point of this case." D.I. 9 at 9. But the fact that RAM *could* support its arguments under the DLLCA does not implicate a public policy interest for the State of Delaware in this case.

### 12. Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

This factor favors transfer. RAM asserts a claim for bad faith breach of contract governed by Virginia law. D.I. 1-1 at 9. A judge in the Eastern District of Virginia is undoubtedly more familiar than I am with Virginia law.

\* \* \* \*

In sum, of the 12 *Jumara* factors, six weigh in favor of transfer (one of them strongly in favor), one weighs against transfer (and is to be given paramount importance), and five are neutral. Considered in their totality, the factors weigh strongly in favor of transfer to the Eastern District of Virginia.

## III. CONCLUSION

For the reasons discussed above, I will grant Standard Insurance's motion to transfer the case to the Eastern District of Virginia.

The Court will issue an Order consistent with this Memorandum Opinion.