IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RAMSEY ASSET MANAGEMENT, LLC ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:23-CV-01554- CMH-WEF |
| v. ) | |
| ) | |
| THE STANDARD INSURANCE COMPANY ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

### Nature of the Action

1.      This action seeks recovery of compensatory from defendant The. Standard Insurance Company for its breach of contract and wrongful refusal to honor its contractual obligations under two business overhead expense policies owned by plaintiff Ramsey Asset Management, LLC (hereinafter, "Ramsey Asset Management").

2.      This action seeks, among other relief, a finding that the defendant The Standard Insurance Company ("Standard") must pay business overhead expense benefits to the plaintiff Ramsey Asset Management for business expenses incurred by Ramsey Asset Management beginning on June 10, 2014, and/or alternatively March 22, 2028, and/or alternatively September 17, 2018, stemming from its principal William Ramsey's cancer diagnoses and his inability to continue to run his business enterprise.

### The Parties

3.      Plaintiff Ramsey Asset Management is an inactive limited liability corporation, which provided investment advisory services to clients in numerous states, with its principal office in the Commonwealth of Virginia.

4.      William Ramsey was the Chief Executive Officer and Chief Investment Officer and principal owner of Ramsey Asset Management.   William Ramsey's position required him to provide complex analysis and decision making necessary to manage clients' investment portfolios.

5.      Defendant Standard is an Oregon corporation with an address at 1100 SW Sixth Avenue, Portland, Oregon, 97204. Standard is licensed to conduct business in Delaware.

## The Insurance Contract

6.      On July 3, 1989, Ramsey Asset Management's predecessor company submitted to Minnesota Mutual Life Insurance Company an application for two insurance policies. The policies were designed to provide disability coverage for business overhead expenses.

7.      One policy, No.00H1825731, was purchased on September 29, 1989. (Exhibit A).

8.      The second policy, No.00H1834539, was purchased on October 29, 1989. (Exhibit B).

9.      The monthly benefit under policy No. 00Hl 825731 is $66,449.00 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $996,735.00.

10.     The monthly benefit under policy No. 00H1834539 is $25,556.80 per month, with a maximum benefit period of fifteen months. The maximum benefit under this policy is $383,352.00.

11.     Both policies currently list Mr. Ramsey as the "Insured" and Ramsey Asset Management as the "Owner".

12.     At some point in time, Minnesota Mutual Life sold all relevant insurance policies to Standard.

13.     The premiums for these policies were billed and paid quarterly by Ramsey Asset

Management.

## Mr. Ramsey's Cancer Diagnosis

14.     On June 10, 2014, Mr. Ramsey was diagnosed with renal cell carcinoma.

15.     Mr. Ramsey sought medical treatment for his condition from Dr. Mark Vasiliadis

in Reston, Virginia, and Dr. Mo Allaf, in Baltimore, Maryland.

16.     The cancer caused Mr. Ramsey to endure severe urological issues and fatigue.

17.     Further, renal cell carcinoma has a high mortality rate. This fact caused Mr. Ramsey

tremendous anxiety about his future.

18.     These symptoms caused Mr. Ramsey to have significant difficulties in

concentrating and focusing.

19.     The combined effect of the urological issues, fatigue, anxiety, and strain on his

concentration and focus rendered Mr. Ramsey unable to perform the substantial and material duties

of his regular occupation.

20.     Mr. Ramsey's drop in job performance was evidenced by the departure of clientele

from Ramsey Asset Management.

21.     Ramsey Asset Management's gross earnings fell precipitously following his

diagnosis.

22.     In 2018, Mr. Ramsey was diagnosed with prostate cancer.  As a result, Mr. Ramsey

underwent surgery for his prostate cancer on September 17, 2018.  The combined effect of the two

surgeries resulted in disabling conditions.  Either were disabling.  The most severe cumulative

effects occurred after the 2018 surgery.  The effects impacted Mr. Ramsey's ability to function

effectively by meeting clients, traveling, and performing the high level analytical activities needed to maintain his business.

23.     As a result of each diagnosis, Mr. Ramsey's gross earnings from his regular occupation were 50% or less than prior average overhead expenses.

24.     Ramsey's illness and disabilities lasted over four years, and continue to the present.

25.     As a result of Mr. Ramsey's medical issues, Ramsey Asset Management winded down its operations starting in 2018.

26.     Ramsey Asset Management ceased operations on December 31, 2019 and has not resumed operations. Mr. Ramsey is not gainfully employed at the present time and is unable to return to meaningful employment in his field.  Mr. Ramsey's conditions required and continue to require: (1) The reasonable and customary care of a physician; and (2) Results in his inability to perform the substantial and material duties of his regular occupation.

### The Filing of the Claim

27.     On behalf of Ramsey Asset Management, Mr. Ramsey provided a notice of insurance claim to Standard on October 17, 2018, stating that he had been unable to fully perform his work duties as of the date of his cancer diagnosis: June 10, 2014.  The Standard agreed to consider disability from March 22, 2018 as timely, but elected to deny disability due to an alleged failure to demonstrate disability as defined in the policies.

28.     On behalf of Ramsey Asset Management, Mr. Ramsey stated in the claim that the cancer illnesses prevented him from providing the necessary focus on the complex analysis and decision making needed to manage his clients' investment portfolios.

29.     On October 17, 2018, Standard acknowledged Ramsey Asset Management's claim. (Exhibit C).

30.     On May 17, 2019, Mr. Ramsey filed an Individual Disability Benefits Insured's Statement[1] that specifically referenced both his renal cell carcinoma (June 2014) diagnosis and his prostate cancer (June 2018) diagnosis and provided information for his treating providers for both conditions and his prescriptions before and after the 2018 diagnosis and surgery.

31.     The Individual Disability Benefits statement included an Attending Physician's Statement identifying both diagnoses and the significant symptoms attributable to each as well as a related stress reaction.

32.     On June 3, 2019, Standard requested information on why notice of claim was not provided within the time period specified in the policy. (Exhibit D).   Standard continued to investigate the notice issue throughout the summer of 2019.

33.     On June 21, 2019, Standard interviewed Mr. Ramsey, and formally requested financial information, including Ramsey Asset Management's business tax returns, schedules and attachments for multiple years, and monthly profit and loss statements. (Exhibit E).

34.     On behalf of Mr. Ramsey Asset Management, Mr. Ramsey was fully compliant, providing financial records for Ramsey Asset Management, including tax returns from 2012 to 2017, profit and loss statements from 2012 to 2018, and the company's general ledgers for 2012 to 2018, in addition to the entirety of his medical records from his attending physicians.

35.     The documentation established that Ramsey met the definition of "disability" or "disabled" set forth in the policies.

36.     On July 22, 2019 Standard wrote to inform Ramsey that the claim was "ongoing, to include the onset date." (Exhibit F).

---

[1] Although the claim was for business overhead expense benefits, this was the form Standard requested be completed.

37.     On September 5, 2019, Standard wrote to report the claim "is ongoing". (Exhibit G). The ongoing review involved assessment of the medical evidence submitted by Ramsey.

38.     On October 4, 2019, Standard formally denied Ramsey Asset Management's claim. (Exhibit H). In explanation of the denial, Standard considered disability from the original diagnosis and did not deny the claim for late notice. The denial stated:

> "Based upon all the available information, we do not find a basis to support that at any time since June 10, 2014 Mr. Ramsey had any injury or sickness which prevent him from performing the material and substantial duties of his occupation beyond the 60-day waiting period. As such, we find no basis for Business Overhead Expenses to be payable."

39.     On April 7, 2020, on behalf of Ramsey Asset Management, Mr. Ramsey appealed Standard's denial of the claim.

40.     On May 20, 2020, Standard's Administrative Review Unit upheld the denial of the claim (Exhibit I). Standard agreed to consider two possible scenarios of disability, one running from 2014 for which they alleged late notice. The other from March 22, 2018 for which they alleged a lack of proof, not late notice. Standard did not separately address the aggravation of Ramsey's disability resulting from the prostate cancer, related surgery, and medication. The denial stated:

> "In summary, we do not find support for medical work activity limitations or restrictions which would prevent your client from performing the substantial and material duties of his regular occupation. As such, we cannot conclude that he has met the definition of disability contained in this policies, and is not eligible to receive BOE benefits."

### Standard's Wrongful Conduct

41.     Standard has denied coverage for all claims pursued by Ramsey Asset Management.

42.     Standard takes the position that the claim was not filed within the 30-day notice provided by the policy for the 2014 claim.  In regard to the claim related to March 22, 2018, Standard asserts there is inadequate proof of disability.

43.     The policy states that a claim must be made within 30 days after the onset of any loss covered by the policy.

44.     Mr. Ramsey has made clear to Standard that he was unaware of the policies and had no contact with the policies after their purchase.  In fact, he did have a copy of the policies until received from Standard by mailing dated December 26, 1018.

45.     Further, the symptoms of his illness kept him from being able to focus on financial issues, including the determination of what insurance assets may have been available to him or his company.

46.     Under these circumstances, it would have been impracticable, if not impossible, for Mr. Ramsey, on behalf of Ramsey Asset Management, to provide notice before he did.

47.     Mr. Ramsey learned of the policies' existence during a financial audit and promptly notified Standard.  Under the circumstances, and late notice should be excused.  Further, Mr. Ramsey's notice was within 30 days of his prostate cancer surgery in September 2018, which also resulted in disability.

48.     Even if not excused, Standard has waived any defense to late notice.

49.     Standard maintains the Virginia law applies to the policies.  Virginia law provides:

"The general rule supported by the weight of authority is that if the insurance company denies liability for a loss and refuses to pay for that reason, and not for the reason that there has been no proof of loss filed by the claimant, it waives the right to insist on the filing of the proof of loss." Seaboard Fire and Marine Ins. Co. v. Hurst, 186 Va. 21, 25 (1947).

50.     The claim for benefits clearly set forth the date of initial disability and the date of the claim.  Accordingly, Standard was on notice of the alleged breach upon the filing of the claim

and had a duty to reserve its rights. It did not reserve its rights and investigated the claim fully, seeking medical records to 2014, financial records, and interviewed Ramsey regarding the reasons for the late notice. The denial letters were based on an alleged failure to demonstrate disability, not on late notice.

51.     Not only did Standard not issue a timely reservation of rights letter, but it continued to investigate the claims and to request documents in support of the claims. Accordingly, Standard is estopped from asserting that the contractual limitations period has run for any period.

52.     Standard's justification for denial of the claims is riddled with inaccuracies and illogical conclusions.

53.     Rather arbitrarily and without reason, Standard chose to consider the claim as of March 22, 2018, rather than the date of Mr. Ramsey's cancer diagnosis on June 10, 2014, and did not consider disability from September 17, 1018 through dissolution of the company.

54.     Standard wrongfully asserted that there was no basis to support that Mr. Ramsey's sickness kept him from working as of June 10, 2014, despite the impairments described in paragraphs 16 through 24.

55.     Without justification, Standard did not find merit in the rigors of Mr. Ramsey's joint role as Chief Executive Officer and Chief Investment Officer of Ramsey Asset Management.

56.     Standard relied on the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") to assess Ramsey's ability to perform his regular occupation.

57.     However, there is no DOT description for a Chief Executive Officer or Chief Investment Officer, nor for Mr. Ramsey's unique dual role for Ramsey Asset Management.

58.     Asset management is a very competitive business to both obtain and keep clients, involving the ability to travel, meet with executives, meet potential clients, and to discuss various

portfolios of stocks, bonds, and other entities. Further, the medical records demonstrate in great detail how Mr. Ramsey's ability to travel, meet with high net worth executives, and otherwise present his investment strategies has been compromised. Standard dismisses these complaints without appreciating the embarrassment and impact on an in person meeting to have the functional limitations, and attendant events associated with these disabilities. These matters are known to Standard and are part of the medical chart, and include soiling oneself during meetings, having clothing that is soiled, and inability to control bladder function. Each of these roles requires a high degree of stamina, attention to detail, and concentration, in addition to being a fiduciary duty, and facing heightened legal liability.

59.     As a direct and proximate result of these claims, Ramsey Asset Management is due $1,380,087.00, the combined amount of the maximum benefits due under both policies.

## COUNT 1

### Breach of Contract

60.     Plaintiff Ramsey Asset Management repeats and incorporates by reference the allegations set forth in paragraphs 1 through 59 above.

61.     Standard has breached the terms of the company's policies. Standard's breaches include, without limitation, its refusal to pay overhead business expense benefits to Ramsey Asset Management for the duration of Mr. Ramsey's sickness while running his business for the 2014 disability claim, for the claim recognized and submitted as of March 22, 2018 or from September 17, 2018.

62.     Ramsey seeks alternative relief either that Standard waived in whole the requirement of timely notice or of submitting the proof of loss because it did not rely upon that in its denial. Alternatively, that Standard wrongfully denied this claim from the time frame of March

22, 2018 because the record supports Ramsey's disability during that time frame. To the extent

that Standard now asserts that the entire claim is time barred either from 2014, or from March 22,

2018, Ramsey asserts that the defense is waived. Standard denied this claim due to a failure to

produce medical evidence which the record shows is inaccurate, arbitrary and capricious.

60.    As a direct result of Standard's breaches of contract, Ramsey Asset Management

has been deprived of the benefit of insurance coverage for which substantial premiums were paid.

As a further result of Standard's breaches of contract, Ramsey Asset Management has suffered

economic injury.

61.    Defendant Standard unlawfully and unreasonably failed and refused to pay benefits

due under the policies despite Ramsey Asset Management's compliance with all material

conditions precedent to receipt of benefits under the policies. Further to the extent than any policy

condition is asserted as a grounds of denial, Standard waived those requirements or wrongfully

refused benefits under the terms and conditions of the policy.

WHEREFORE, plaintiff Ramsey Asset Management, LLC respectfully requests that this

Court enter judgment in its favor and against defendant The Standard Insurance Company as

follows:

a.    Awarding Ramsey Asset Management, LLC compensatory damages for Standard's

breaches of contract:

b.    Awarding Ramsey Asset Management pre- and post-judgment interest; and,

c.    Awarding such other and further relief as this Court deems just and proper.


RAMSEY ASSET MANAGEMENT, LLC
By counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555

_/s/ John D. McGavin_____
John D. McGavin (VSB 21794)
jmcgavin@mbbtklaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of January, 2024, a true and accurate copy of the foregoing was filed via the CM/ECF system.

E. Ford Stephens, VSB #25959
Christian & Barton, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-4037
estephens@cblaw.com
Counsel for Defendant

Of Counsel:

Brooks Magratten {pro hac vice)
Michael J. Daly (pro hac vice)
Pierce Atwood, LLP
One Citizens Plaza, 10th Floor
Providence, RI 02903
bmagratten@pierceatwood.com
mdaly@pierceatwood.com

Mr. James W. Semple
Mr. R. Grant Dick, IV
Cooch and Taylor
The Nemours Building
1007 N. Orange St., Suite 1120
P.O. Box 1680
Wilmington, DE 19801-1680
isemple@coochtavlor.com
gdick@coochtavlor.com

_/s/ John D. McGavin_____
John D. McGavin (VSB 21794)